## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **TERRENCE N. GILLILAND, DENISE M. GILLILAND, and LUIS S. GALLEGOS,** | **8:12CV384** |
| **Plaintiffs,** | |
| **vs.** | **MEMORANDUM AND ORDER** |
| **HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC,** | |
| **Defendant.** | |

This matter is before the Court on the following motions filed by Defendant Harley Davidson Motor Company Group, LLC ("Harley-Davidson"): the Motion for Summary Judgment (Filing No. 94); the Motion to Exclude Any Testimony or Evidence Relating to the Pinch Bolts on the Subject Motorcycle (Filing No. 101); the Motion to Exclude the Testimony of Plaintiffs' Expert Witness James M. Weaver, P.E. (Filing No. 103), and the Motion for Hearing and Request for Oral Argument on Pending Motions (Filing No. 114). For the reasons stated below, the Motions will be denied.

## FACTUAL BACKGROUND

### I.    Uncontroverted Facts

Unless otherwise indicated, the following facts were presented in the parties' briefs and were supported by pinpoint citations to admissible evidence in the record that the parties have admitted, or that the parties have not properly resisted[1] as required by NECivR 56.1[2] and Fed. R. Civ. P. 56.

---

[1] "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1).

[2] None of Harley-Davidson's briefs includes a numbered statement of facts as required by NECivR 56.1(a)(1). In its brief in support of its Motion for Summary Judgment (Filing No. 95), Harley-

### A.    The Parties

Plaintiffs Terrence Gilliland ("Gilliland") and Denise Gilliland ("Mrs. Gilliland") reside in Glenwood, Iowa. Plaintiff Luis Gallegos ("Gallegos") resides in Council Bluffs, Iowa.  Harley-Davidson is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin. Defendant removed this action from the District Court of Dodge County, Nebraska, invoking the Court's diversity jurisdiction, and asserting that venue is proper in this Court because the motorcycle at issue in this case was purchased from a Harley-Davidson dealership in Omaha, Nebraska.

### B.    The Accident

This case arises out of a motorcycle accident that occurred on April 22, 2010, in Mills County, Iowa. Gilliland purchased the motorcycle, a 2007 Harley-Davidson VRSCAW V-Rod ("subject motorcycle"), from Dillon Brothers Harley-Davidson in Omaha on or about July 23, 2007.  At the time of the accident, Gilliland was operating the subject motorcycle, which had approximately 1,500 miles on the odometer. Gallegos was a passenger.  Neither Gilliland nor Gallegos can recall, or knew at the time, what caused the accident. Plaintiffs claim the accident occurred because the center post of the subject motorcycle's triple-tree assembly came apart, causing the crash.

---

Davidson incorporates by reference the statement of facts contained in its brief in support of its Motion to Exclude the testimony of James Weaver (Filing No. 102). The statement of facts in that brief does not contain short numbered paragraphs as required by NECivR 56.1(a)(2), but does include citations to the record. Harley-Davidson separately filed a "Proposed Findings of Fact" that included separately numbered paragraphs with citations to the record. (Filing No. 105.) Plaintiffs responded to Harley-Davidson's statement of facts in separately numbered paragraphs, but it is unclear as to which set of facts Plaintiffs responded. (Filing No. 113.) The Court has attempted to discern the undisputed facts, but because of noncompliance with NECivR 56.1, ambiguities must be resolved in favor of Plaintiffs as the non-moving party.

### C.    Relevant Components of the Subject Motorcycle

This case relates to steering components of the subject motorcycle Plaintiffs refer to as the "triple tree assembly," also referred to as the "front fork assembly." A diagram of the triple tree assembly appears below:



*Part no. 6: fork stem cap;*

*Part no. 8: fork stem nut;*

*Part no. 7: fork stem lockwasher;*

*Part no. 27: upper triple clamp;*

*Part no. 2: pinch bolts (4);*

*Part no. 34: upper adjusting nut or seat upper head cone;*

*Part no. 26: fork stem, lower triple clamp; and*

*Part nos. 28-29: fork tube and slider assembly or fork assembly (left and right).*

Plaintiffs specifically allege that the fork stem nut (part no. 8) and pinch bolts (part no. 2) on the triple tree assembly were loose and not properly fastened or installed at the time the motorcycle was manufactured. Plaintiffs allege that the loose stem nut and pinch bolts reduced the steering resistance, and caused steering instability during operation of the subject motorcycle. (Filing No. 112-1 ¶ 6.)

## II.    Procedural and Discovery History

Plaintiffs initially filed a complaint ("Original Complaint") on December 13, 2010, in the District Court of Douglas County, Nebraska, alleging theories of recovery including negligent manufacturing, negligent failure to warn, negligent inspection/testing, negligent training and strict liability, with respect to the subject motorcycle.  Specifically, Plaintiffs alleged that "a metal nut on or near the top of the center post of the

3

motorcycle's triple tree assembly" was not adequately and properly secured such that the triple tree assembly came apart and caused Gilliland to crash. (Filing No. 100-1 at 3.) The nut at issue in the Original Complaint and discovery responses is depicted as part no. 8 above. The parties and several party representatives inspected the subject motorcycle on February 18, 2011, at Holstein's Harley-Davidson in Omaha. At that time, the motorcycle was examined with no further disassembly or destruction.

At some point after the nondestructive inspection of the subject motorcycle, Jack Vaughn ("Vaughn"), a mechanic and friend of Gilliland, performed repairs to the subject motorcycle. During the repairs, the original lower triple clamp/stem assembly, stem nut, and upper triple clamp were unaltered. However, Vaughn removed the pinch bolts and reused them in the new assembly, tightening them in place.[3]  Gilliland testified that "after the accident I let [Vaughn] know that I relinquish myself from the bike. I had no interest in it whatsoever. None. As far as I was concerned, he could have the bike." (Filing No. 96-3, Gilliland Dep. at 104:12-16.)

Plaintiffs moved to dismiss the Original Complaint on October 3, 2011, and neither the parties nor the Douglas County District Court took any further action in the matter until the case was dismissed, without prejudice, for lack of prosecution on June 7, 2012.

On October 12, 2012, Plaintiffs filed their Complaint in this case (Filing No. 1 at ECF 5-16) in Dodge County, Nebraska District Court, alleging nearly identical claims. Harley-Davidson removed the action to this Court on October 30, 2014. (Filing No. 1.)

---

[3] As discussed below, Harley-Davidson argues that Plaintiffs' claims and expert testimony in its second lawsuit rely upon the torque measurements of the pinch bolts on the subject motorcycle, and that it had no reason to measure the torque of the pinch bolts during the first inspection on February 18, 2011.

Harley-Davidson now moves to exclude any evidence regarding the pinch bolts on the subject motorcycle because they were removed and replaced by Vaughn after the accident. Harley-Davidson also moves to exclude the testimony of Plaintiffs' expert, James M. Weaver ("Weaver"), on the grounds that Weaver's testimony is unreliable. Harley-Davidson argues that if its motions are granted, it is entitled to summary judgment on Plaintiffs' claims.

### MOTION FOR ORAL ARGUMENT ON DEFENDANT'S MOTIONS

The Court will not grant Harley-Davidson's request for a hearing. "In general the court does not allow oral argument or evidentiary hearings on motions." NECivR 7.1(d). Thus, there is no right to a hearing on the civil motions at issue here, including Harley-Davidson's *Daubert* challenge. The Supreme Court has stated that a district court "must have the same kind of latitude in deciding *how* to test an expert's reliability, . . . as it enjoys when it decides whether or not that expert's relevant testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Courts have interpreted this statement to mean that a district court is not required to hold a hearing to satisfy its responsibilities under *Daubert*. *See e.g. Hanford Nuclear Reservation Litigation v. Jeanne Jaros*, 292 F.3d 1124, 1138–39 (9th Cir. 2002) (affirming the district court's decision to refuse a *Daubert* hearing where the district court had the experts' reports, deposition testimony, and the experts' affidavits). The parties have indicated to the Court that they do not plan to introduce any additional evidence or examine witnesses or experts should a hearing be held. The record is sufficient to allow the Court to decide the Motions for Summary Judgment and In Limine, as well as to perform its gatekeeping

function under *Daubert*. Accordingly, a hearing would not be helpful to the Court on Harley-Davidson's Motions.

## MOTION TO EXCLUDE EVIDENCE OF PINCH BOLTS

### I.     Standard for Spoliation Sanctions

The Eighth Circuit recently held that "federal law applies to the imposition of sanctions for the spoliation of evidence." *Sherman v. Rinchem Co.*, 687 F.3d 996, 1006 (8th Cir. 2012). "Under federal law, 'there must be a finding of intentional destruction indicating a desire to suppress the truth.'" *Id.* (quoting *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004)). However, a district court may impose sanctions "even absent an explicit bad faith finding, where a party destroys specifically requested evidence after litigation has commenced." *Gallagher v. Magner*, 619 F.3d 823, 845 (8th Cir. 2010) (citing *Stevenson*, 354 F.3d at 749–50).

### II.    Appropriateness of Sanctions Against Plaintiffs

Harley-Davidson argues that any evidence related to the pinch bolts should be excluded because the subject motorcycle was disassembled, repaired, and then reassembled by Vaughn after the original lawsuit was commenced. When Vaughn performed the repairs, he took torque measurements of the pinch bolts in their post-accident condition. He removed the bolts and reused them when he replaced certain parts of the triple tree assembly. Harley-Davidson argues that the measurements of the pinch bolts cannot be replicated, verified, or checked for accuracy. Harley-Davidson also asserts that Vaughn cannot produce the tool he used to take the measurements, so the accuracy and calibration of the tool cannot be verified.

6

Although Gilliland admits he gave the subject motorcycle to Vaughn, there is insufficient evidence at this time from which to conclude that he or any Plaintiff was motivated by a desire to suppress the truth. Harley-Davidson admits that Gilliland delivered the subject motorcycle to Vaughn after both parties had inspected it during the first lawsuit. Further, in October 2011, nearly eight months after the initial inspection, Plaintiffs moved to dismiss the original lawsuit. There is no evidence that at the time Plaintiffs moved to voluntarily dismiss, they did so with the intention of refiling. Even if Plaintiffs did intend to refile, "[t]he ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence indicating a desire to suppress the truth, not the prospect of litigation." *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (citing *Morris v. Union Pac. R.R.*, 373 F.3d 896, 902 (8th Cir. 2004)). Based upon the record, the Court cannot conclude at this time that Gilliland acted with desire to suppress the truth.

The importance of the torque measurements to Plaintiffs' case is unclear. Harley-Davidson's primary concern appears focus on statements contained in Weaver's expert report (Filing No. 98-1). In the report, Weaver states that a review of attorney-provided documents revealed: "Testing performed by Mr. Jack Vaughan using a beam torque wrench revealed that all four triple tree pinch bolts was (sic) tightened to a level well below that required during factory assembly (41--47 Newton meters)." (Filing No. 98-1 at 2.) The report further stated that "[i]nadequate pinch bolt torque during assembly combined with looseness in the fork stem nut would contribute to both play and inadequate steering damping during normal motorcycling conditions." (*Id.* at 3.) The degree to which pinch bolt torque contributed to inadequate steering damping is not

7

immediately apparent from Weaver's report. Accordingly, it is difficult to determine the extent to which Plaintiffs' claims depend on Vaughn's torque measurements at this stage. The Court agrees with the court in *Victor v. Lawler*, No. 3:08-CV-1374, 2011 WL 3664741, at *5 (M.D. Pa. Aug. 19, 2011):

> Many of the considerations which determine whether a spoliation sanction is appropriate, however, are factual matters which are best decided by a trial judge in the context of a trial, where the court can consider the precise nature of the proof at trial, and the credibility of various witnesses.

The reliability of the torque measurements and admissibility of those measurements will depend upon the credibility and context of the evidence to be adduced at trial. Further, any appropriate sanction for the failure to preserve the subject motorcycle will best be determined after the Court has considered that evidence in context. Accordingly, the Court will deny Harley-Davidson's Motion to Exclude Pinch Bolt Evidence, without prejudice to reassertion of objections at trial.

## MOTION TO EXCLUDE WEAVER'S TESTIMONY

### I.    Standard of Review Under Fed. R. Civ. P. 702

Harley-Davidson argues that Weaver should be precluded from offering any testimony at trial under Federal Rule of Evidence 702.  Fed. R. Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts "in admitting expert testimony, [have] the gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *First Union Nat. Bank v. Benham*, 423 F.3d 855, 861 (8th Cir. 2005) (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999)); *see also Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993). "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert,* 509 U.S. at 592).

District courts have "broad discretion" in determining whether an expert's testimony is admissible. *Weisgram v. Marley Co.,* 169 F.3d 514, 518 (8th Cir. 1999). Regardless of the factors the court evaluates in determining the admissibility of expert testimony, "the main inquiry is whether the proffered expert's testimony is sufficiently reliable." *First Union Nat. Bank*, 423 F.3d at 861 (citing *Unrein v. Timesavers, Inc.,* 394 F.3d 1008, 1011 (8th Cir. 2005) ("There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant"). "An expert's opinion should be excluded only if that 'opinion is so fundamentally unsupported that it can offer no assistance to the jury.'" *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (quoting *Bonner v. ISP Tech., Inc.,* 259 F.3d 924, 929 (8th Cir. 2001)). "[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Miles v. General Motors Corp*., 262 F.3d 720, 724 (8th Cir. 2001).

Harley-Davidson argues Weaver (1) lacks the background and experience necessary to offer opinions regarding motorcycle design, manufacture, stability or

operation, and (2) bases his opinions on guesswork and speculation and not supported by any reliable evidence. The Court concludes that Harley-Davidson's Motion should be denied, without prejudice to the assertion of objections at the time of trial.

### A.    Weaver's Expertise in Motorcycle Dynamics

The Eighth Circuit has held that "an individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise." *Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990).

Harley-Davidson argues that Weaver is not an expert in motorcycle dynamics because he has no professional engineering experience related to motorcycle design, nor does he have any professional experience directly related to motorcycle engineering or repair. Weaver's professional experience has related in large part to buildings such as restaurants, houses, and manufacturing facilities. (Filing No. 97-2 at 10:6-12.) However, Weaver has been a motorcycle enthusiast since 1965, and has extensive knowledge of motorcycle systems and steering defects. He has also testified as an expert in product liability cases involving motorcycle steering defects (*id*. at 14:5-9; 15:2-10), and has been retained as an expert in other cases involving motorcycles, including one involving a Harley-Davidson motorcycle with steering problems (*id*. at 18:3-19:24).

Even if there are questions about Weaver's qualifications, the Eighth Circuit has explained that "[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir.2006) (citation omitted). Weaknesses in Weaver's qualifications and testimony may be addressed through vigorous cross-

examination. *See Daubert,* 509 U.S. at 596. Accordingly, the Court will not exclude Weaver's testimony merely because he is not an expert in motorcycle dynamics.

### B.    Reliability of Weaver's Testimony

Harley-Davidson also argues that Weaver's opinions are not supported by scientific methodology as required by *Daubert* and Rule 702.   Harley-Davidson states that Weaver cannot say with any degree of certainty that instability in the steering components or "steering wobble" occurred at all. Harley-Davidson notes that Weaver's opinion is based largely on eliminating other potential causes. For example, Weaver ruled out time of day, weather, and road conditions according to the testimony of Gilliland and Gallegos. He also concluded that operator error was unlikely because Gilliland was riding in a straight line at the time. (Filing No. 97-2 at 26:19-22.) Weaver explained that "there seems to be no other apparent cause of a capsize in daylight, in excellent riding conditions, excellent roadway conditions." (*Id.* at 27:1-3.) Weaver also notes that he eliminated partially deflated tires as a possible cause, because he reviewed Gilliland's deposition in which Gilliland testified that he regularly checked tire pressure. (Filing No. 97-2 at 35:20-22.) Weaver opined that Weaver would have noticed a deflated tire prior to the accident. (Filing No. 97-2 at 36:1-16.)

Although alternative explanations must be considered, *Lauzon*, 270 F.3d at 687, it appears that Weaver performed an analysis of evidence and other sources in reaching his opinion. Weaver reviewed various documents, including the depositions of Gilliland and Gallegos; examined the damaged triple tree assembly; made measurements and calculations; reviewed Harley-Davidson's parts manual; reviewed photographs taken by Defendant's expert at the post-accident inspection of the

motorcycle, and assembly drawings for the bike; and applied engineering principles in arriving at his opinions. He also relied on standard text used by experts in the field of motorcycle dynamics.

Harley-Davidson disputes this methodology because Weaver failed to perform certain tasks and take certain measurements. For example, Harley-Davidson argues that Weaver did not perform his own calculations to determine whether the stem nut was loose; failed to perform an accident reconstruction; did not calculate what clamp loads were required to prevent unintended moment in the steering components; and did not try to recreate the "wobble" with an exemplar motorcycle. Thus, Harley-Davidson argues that Weaver's deficient methods render his opinions unreliable.

The Eighth Circuit has found that a review of documentation, texts, and other evidence can form a sufficient basis for an expert opinion. In *Miles v. Gen. Motors Corp.*, 262 F.3d 720, 724 (8th Cir. 2001), a product liability case involving a motorcycle accident, the plaintiff argued the testimony of one of the defendant's experts was unreliable because at the time of the expert's deposition the expert had not examined the plaintiff, the x-rays taken of the plaintiff's leg, the motorcycle, the truck, or the scene of the accident. The Eighth Circuit disagreed, noting that the expert reconstructed the accident by reviewing a police report; photographs of the scene; the plaintiff's medical records; the plaintiff's radiology reports; witness statements and depositions; and relevant medical literature. *Id.* The court concluded that the expert was not required to use the methodology most suitable to the plaintiff, and that the expert was able to glean the requisite information through the methods he used. *Id.* Weaver used a similar

12

approach by reviewing evidence, texts, and other documentation to formulate his opinions. The Court cannot conclude that this method is inherently unreliable.

Harley-Davidson also argues that Weaver's opinions are based on shaky evidence and speculation. For example, Weaver testified that he was "not totally certain" whether the pinch bolt tension changed as a result of the accident and whether the stem nut was not tightened in the factory or whether it was loosened after it left the factory (Filing No. 97-3 at 23:4-15); Weaver stated that the stem nut was not sufficiently threaded down onto the steering stem, based upon Weaver's visual inspection rather than any specific measurement (*see id.* at 58:23-59:7, 63:11-25); Weaver's opinion was based on an inaccurate count of the threads on the stem nut (*id.* at 43:11-44:2, 62:24-63:4); and his conclusions regarding the torque measurements of the pinch bolts were based upon Vaughn's measurements when Vaughn repaired the subject motorcycle, although Weaver admits that he could not confirm the accuracy of Vaughn's measurements (s*ee id.* at 87:22-88:10, 88:17-89:7).

The focus of Harley-Davidson's argument appears to be that the factual basis for Weaver's testimony is unsupported and not properly verified. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bonner*, 259 F.3d at 929 (quoting *Hose v. Chicago Northwestern Transp.* Co., 70 F.3d 968, 974 (8th Cir. 1995) (internal citations and quotations omitted)). In this case, Weaver's testimony is "not so fundamentally unsupported that it could offer no assistance to the jury." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007). Although Harley-Davidson has identified several potential

13

weaknesses in Weaver's methodology and conclusions, it may address these weaknesses through cross-examination and its own experts. *Id.*; *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Even if the opinions proffered by Weaver may be subject to challenge as to the weight they should be afforded, the Court cannot conclude that Weaver's testimony is inadmissible.

## MOTION FOR SUMMARY JUDGMENT

### I.  Motion for Summary Judgment Standard

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint,* 736 F.3d 1134, 1136 (8th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). "Summary Judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n. 2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) *cert. denied*, 132 S.Ct. 513 (2011)) (internal quotations omitted). In reviewing a motion for summary judgment, the court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.,* 703 F.3d 1104, 1107 (8th Cir. 2013). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's

14

claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe,* 690 F.3d at 1011 (quoting *Torgerson*, 643 F.3d at 1042) (internal quotations omitted). "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) (quoting *Torgerson*, 643 F.3d at 1042) (internal quotations omitted). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial" and summary judgment is appropriate. *Torgerson*, 643 F.3d at 1042 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)) (internal quotations omitted).

15

**II.      Choice of Law**

The Court applies Nebraska's choice-of-law rules to determine which substantive law applies. *See John T. Jones Constr. Co. v. Hoot Gen. Constr. Co., Inc.*, 613 F.3d 778, 782 (8th Cir. 2010) ("We apply the choice-of-law rules of the forum state in a diversity action."). Under Nebraska choice-of-law rules, the Court seeks guidance from Restatement (Second) of Conflict of Laws. *Erickson v. U-Haul Int'l*, 767 N.W.2d 765, 772 (Neb. 2009). "Section 145(2) of the Restatement provides the contacts that a court should consider when determining which state has the most significant relationship to the parties and the occurrence under general conflict of law principles." *Id.* at 773. These contacts include: (1) the place where the injury occurred; (2) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (3) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145(2). Section 147 of the Restatement provides that "the local law of the state where the injury occurred determines the rights and liabilities of the parties," unless "some other state has a more significant relationship under the principles stated in § 6 to the occurrence, the thing and the parties."

Based upon these factors, Iowa has the most significant relationship to this action. The accident took place in Iowa, the Plaintiffs are residents of Iowa, and all of the work on the subject motorcycle was performed in Iowa. Although the parties do not appear to disagree that Iowa law applies, the Court includes this analysis because there is a true conflict between Nebraska and Iowa law. Specifically, Nebraska follows the "user-contemplation test" for product liability cases, in which a product is "unreasonably

dangerous" if it causes harm beyond "that which would be contemplated by the ordinary user or consumer who purchases it, with the ordinary knowledge common to the foreseeable class of users as to its characteristics." *Rahmig v. Mosley Mach. Co.*, 412 N.W.2d 56, 69 (Neb. 1987). Iowa does not follow the "user-contemplation test" as that test was effectively dropped from section 2 of the Restatement (Third) of Torts. *See Wright v. Brooke Group, Ltd.*, 652 N.W.2d 159, 167, 168-69 (Iowa 2002). Under Iowa law, Plaintiffs must demonstrate that (1) the product contained a manufacturing defect or defects that departed from the product's intended design at the time it left the defendant's control; and (2) that the manufacturing defect was a proximate cause of plaintiff's damages.[4] *Id.* at 178.

## III.   Discussion

Harley-Davidson argues that if Weaver is excluded as Plaintiffs' expert, Plaintiffs are left with no way to prove that the subject motorcycle contained a manufacturing defect, or that the defect was the proximate cause of Plaintiffs' damages. The Court agrees that expert testimony will be necessary to prove Plaintiffs' theory of the case— that the accident was caused by "wobble" in the subject motorcycle's steering components and the "wobble" was caused by a manufacturing defect. However, as discussed above, the Court cannot conclude at this time that Weaver's testimony is inadmissible under Federal Rule of Civil Procedure 702 and *Daubert*. Accordingly, Harley-Davidson's Motion for Summary Judgment is denied.

---

[4] This law applies to all manufacturing defect claims, regardless of whether they are classified as negligence or strict liability claims. *Wright*, 652 N.W.2d at 178.

**CONCLUSION**

For the reasons stated, there is no evidence in the record at this time of bad faith on the part of the Plaintiffs sufficient to impose sanctions for spoliation. Harley-Davidson's arguments with respect to Weaver's testimony go to Weaver's credibility and may be attacked through presentation of their own evidence and through cross-examination. Because the Court will not exclude Weaver's testimony at this time, Harley-Davidson is not entitled to summary judgment.

Accordingly,

IT IS ORDERED:

1.      The Motion to Exclude Any Testimony or Evidence Relating to the Pinch Bolts on the Subject Motorcycle (Filing No. 101), filed by Defendant Harley Davidson Motor Company Group, LLC ("Harley-Davidson") is denied, without prejudice to Defendant's assertion of objections at trial;

2.      The Motion to Exclude the Testimony of Plaintiffs' Expert Witness James M. Weaver, P.E. (Filing No. 103), filed by Harley-Davidson is denied;

3.      The Motion for Summary Judgment (Filing No. 94), filed by Harley-Davidson is denied; and

4.      The Motion for Hearing and Request for Oral Argument on Pending Motions (Filing No. 114), filed by Harley-Davidson is denied.

Dated this 8th day of January, 2015

                                        BY THE COURT:

                                        s/Laurie Smith Camp
                                        Chief United States District Judge

18